BREEAN L. BEGGS WSBA # 20795
Paukert & Troppmann, PLLC
522 W. Riverside Ave., Suite 560
Spokane, WA 99201
(509) 232-7760

JEFFRY K. FINER WSBA #14610
Law Office of Jeffry K. Finer
35 W. Main, Suite 300
Spokane, WA 99201
(509) 835-5211

# UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| ESTATE OF JOSHUA LEVY, deceased, and SUSAN LEVY, in her personal capacity and as representative of the ESTATE of JOSHUA LEVY, and DAVID BREIDENBACH, <br><br>　　Plaintiffs, <br><br>　　vs. <br><br> CITY OF SPOKANE, SPOKANE COUNTY, CHRIS KEHL, MICHAEL MCCASLAND, SGT. YAMADA, and, JOHN/JANE DOES 1-10, each in their personal and representative capacities. <br><br>　　Defendants. | Case No.: CV-10-233-LRS <br><br> COMPLAINT FOR DAMAGES FOR VIOLATION OF CIVIL RIGHTS AND NEGLIGENT INFLICTION OF EMOTIONAL DISTRESS <br><br> JURY DEMANDED |

COMPLAINT • Page 1

Paukert & Troppmann, PLLC
522 W. Riverside Ave., # 560
Spokane, WA 99201
Telephone: (509) 232-7760

# I. PARTIES

1.1  Plaintiff ESTATE OF JOSHUA LEVY was created on August 24, 2007. Prior to his death JOSHUA LEVY aka WILL BREIDENBACH was at all times pertinent to this litigation a resident of Washington, residing in the Eastern District of Washington. SUSAN LEVY was appointed personal representative of the Estate of Joshua Levy on August 24, 2007.

1.2  Plaintiff SUSAN LEVY is and has been at all times pertinent to this litigation a resident of the State of Washington, residing in the Western District of Washington. Plaintiff SUSAN LEVY is the natural mother of Joshua Levy, deceased. SUSAN LEVY brings claims on behalf of the Estate of Joshua Levy and on her own behalf.

1.3  Plaintiff DAVID BREIDENBACH is and has been at all times pertinent to this litigation a resident of the State of Washington, residing in the Eastern District of Washington. Plaintiff DAVID BREIDENBACH is the natural father of Joshua Levy, deceased.

1.4  Defendant CITY OF SPOKANE is a municipality in the State of Washington and employer/principal of the individuals responsible for determining custom and policy for its Police Department's use of force in response to citizens threatening suicide.

1.5  Defendant SPOKANE COUNTY is a municipality in the State of Washington and employer/principal of the individuals responsible for determining custom and policy for its Sheriff's Department's use of force in response to citizens threatening suicide.

1.6   Defendant CHRIS KEHL at all times pertinent to this complaint was a law enforcement officer employed by Spokane County. Defendant Kehl is sued in his personal and representative capacity.

1.7 Defendant MICHAEL MCCASLAND at all times pertinent to this complaint was a law enforcement officer employed by the City of Spokane. Defendant McCasland is sued in his personal and representative capacities.

1.8 Defendant SGT. YAMADA at all times pertinent to this complaint was a law enforcement officer employed by the City of Spokane. Sgt. Yamada is sued in his personal and representative capacities.

1.9   Defendants JOHN/JANE DOE 1-10 at all times pertinent to this complaint were individuals employed by the City of Spokane and/or Spokane County that were involved in the decision-making and/or implementation of the plan to forcibly seize Joshua Levy on July 27, 2007.  Plaintiffs currently do not know the legal names of these Doe Defendants but will amend their complaint upon further discovery and investigation.  These Doe defendants have actual knowledge of their

personal involvement in the death of Joshua Levy.  Defendants John/Jane Doe 1-10 are each sued in his or her personal and representative capacities.

## II.   JURISDICTION AND VENUE

2.1   All acts complained of occurred in the Eastern District of Washington.

2.2   Venue is proper in the United States District Court for the Eastern District of Washington.

2.3   Jurisdiction is proper in the United States District Court pursuant to Title 42, United States Code § 1983; Title 28 USC § 1331; and 28 USC § 1343(a)(3).

2.4   This court has personal and subject matter jurisdiction.

**SUPPLEMENTAL JURISDICTION**

2.5   On January 22, 2010, Plaintiff Breidenbach presented a non-judicial notice of claim to the City of Spokane alleging solely state-law claims.

2.6   Over 60 days have passed since the presentation of the non-judicial notice of claim.

2.7   On July 19, 2010, Plaintiff Breidenbach presented a non-judicial notice of claim to Spokane County alleging solely state-law claims.

2.8   Once 60 days have passed from the date of presentment in 2.7, above, Plaintiff Breidenbach will amend this complaint to add state law claims against Spokane County.

## III. FACTS

3.1  On the evening of July 26, 2007, Joshua Levy rode his bicycle to the Monroe Street Bridge and assumed a position standing on the concrete railing overlooking the falls.

3.2  Members of the Spokane Police Department responded to the scene and determined that Joshua was suicidal and posed a threat of jumping off the bridge.

3.3  Members of the Spokane Police Department closed the Monroe Street Bridge and began communicating with Joshua.

3.4  Members of the Spokane Police Department eventually contacted Joshua's former mental health providers in Western Washington and his current mental health provider in Spokane, Spokane Mental Health.

3.5  Members of the Spokane Police Department learned that Joshua suffered from severe mental illness and had recently been hospitalized for his condition. The members learned of his prior mental health history, treatment and behaviors regarding bridges.

3.6  Members of the Spokane Police Department decided to use a "no hands on" and "must deliver self" approach in order to reduce the chances of Joshua jumping from the bridge. The responding law enforcement members maintained this approach until approximately 3:00 p.m. on July 27, 2007.

3.7  Members of the Spokane Police Department secured the bridge deck and railing where Joshua was located and determined that Joshua did not have a weapon.

3.8  On the morning of July 27, 2007, a trained mental health professional from Spokane Mental Health responded to the scene and offered assistance.  Members of the Spokane Police Department did not allow the trained mental health professional access to or communication with Joshua.  The trained mental health professional provided members of the Spokane Police Department with the cellular telephone number of a psychiatrist whom with they could consult; but upon belief, the members of the Spokane Police Department did not contact the psychiatrist for assistance.

3.9  David Breidenbach was notified that his son was on the bridge on the morning of July 27, 2007, and promptly responded to the scene.  He was met by Spokane Police Chief Ann Kirkpatrick and other members of the on-scene command team.  David was promised by Chief Kirkpatrick and the command team that they would not attempt to use force against Joshua.  David Breidenbach relied upon that promise to remain on the scene and observe his son.

3.10  In the afternoon of July 27, 2007, members of the Spokane County Sheriff's Department began to relieve members of the Spokane Police Department.  The members of both departments acted in concert with mutual knowledge of the

others' actions and developed and implemented a common plan to terminate the standoff by using "hands on" force against Joshua.

3.11   At approximately 3:00 p.m. on July 27, 2007, members of both departments changed their plan of "no hands on" while waiting for Joshua to self-deliver.  Instead, they decided to forcibly seize and remove him from the bridge.  Upon belief, this decision to use force with the substantial danger of a resulting fatal fall was made and/or ratified by policy makers from one or both municipalities.  Upon belief, this decision was made without obtaining the assent of any of Joshua's current or former mental health providers or the psychiatrist offered by Spokane Mental Health.

3.12   Upon belief, members of one or both departments convinced Joshua to step down from the concrete railing in order to urinate in a manner that afforded Joshua more privacy.  As Joshua was standing at the bridge railing for the purpose of urinating, Michael McCasland shot a taser towards Joshua.  Upon belief, because of the long distance from shooter to target, the taser probes flew past Joshua on either side without hitting him.  Joshua reacted to the taser wires and quickly returned to the perch on the railing that he had been occupying for the previous twenty hours.

3.13   After Joshua had returned to his perch on the railing, Chris Kehl and another member from one of the departments began running across the bridge deck

COMPLAINT • Page 7

Paukert & Troppmann, PLLC
522 W. Riverside Ave., # 560
Spokane, WA 99201
Telephone:  (509) 232-7760

towards Joshua. Joshua noticed the running officers and moved as far out on the edge of the railing as he could to avoid them. When the members reached for him, he jumped off the bridge to his death.

3.14 David Breidenbach had no warning from either department that their tactics would be changing and thus was watching his son when he was rushed by department members and then jumped to his death.

3.15 Upon belief, both the City and County had an established policy of denying access by mental health professionals to citizens threatening suicide until the citizen had been taken into custody.

3.16 Upon belief, both the City and County were deliberately indifferent to the training needs of its law enforcement members charged with responding to threats of suicide by jumping.

3.17 As a proximate cause of the Defendants' deprivation of Joshua Levy's federal civil rights, Joshua Levy suffered substantial general damages in anticipation of death, including pain and suffering in an amount to be proven at trial

3.18 As a proximate cause of Defendants' deprivation of Joshua Levy's federal civil rights, his Estate suffered a loss of earnings in an amount to be proven at trial.

3.19    As a proximate cause of Defendants' deprivation of Joshua Levy's federal civil rights, his Estate incurred funeral expenses in an amount to be proven at trial.

3.20    Defendants actions of attempting to taser Joshua Levy and violently seize him on a dangerous bridge railing deprived Joshua Levy, Susan Levy and David Breidenbach of their federal civil rights, including procedural and substantive due process and the right be free from unreasonable seizure, excessive force and deadly force with deliberate disregard of the rights of Plaintiffs with the known purpose of causing some harm to Joshua Levy without legal justification.

3.21    Accordingly, under the Fifth and Fourteenth Amendments' due process clause and the Fourth Amendment's protection against unreasonable seizure and excessive and deadly force, Susan Levy and David Breidenbach have suffered general damages related to the interference in the parent child relationship due to the death of their son, in an amount to be proven at trial.

## FEDERAL CLAIMS FOR RELIEF

**Violations of Title 42, United States Code § 1983**

4.1    Defendants' conduct constitutes the deprivation of Joshua Levy's federally protected rights under color of law, i.e., unreasonable seizure, excessive force, deadly force, and homicide of Joshua Levy in violation of the Fourth, Fifth and Fourteenth Amendments to the Constitution of the United States. As a result

of this conduct Defendants caused Joshua Levy to experience fear and suffering, and ultimately loss of his life. This claim is made on behalf of the Estate of Joshua Levy.

4.2    Defendants' conduct constitutes a deprivation of federally protected rights under color of law.  As a result of this conduct, Defendants caused Plaintiffs Susan Levy and David Breidenbach to suffer the loss of emotional support and association of their son Joshua Levy. This claim is made on behalf of Susan Levy and David Breidenbach under the Fourteenth Amendment's due process clause.

4.3    Defendants' actions in violating the federal civil rights set forth in Paragraphs 4.1 through 4.2 were done intentionally, wantonly, oppressively, and/or with reckless indifference subjecting the non-municipal defendants to liability for punitive damages in an amount to be proven at trial.

4.4  Defendants acted with a common purpose with knowledge of what they were each doing and contributed to legal injuries that are often difficult to divide and Defendants are therefore jointly and severally liable for all remedies except for punitive damages.

**STATE-BASED CLAIM FOR RELIEF**

4.5 David Breidenbach claims negligent infliction of emotional distress against City of Spokane and individual defendants employed by City of Spokane.

4.6  City of Spokane Defendants owed a duty to David Breidenbach to act reasonably in responding to Joshua Levy's threat of suicide on the Monroe Street Bridge and in communicating with David Breidenbach.

4.7  City of Spokane Defendants breached their duty of care to David Breidenbach, proximately causing him to witness the violent death of his son.

4.8  The breach of duty included but was not limited to:

    a) promising David Breidenbach that law enforcement would not use force against his son and then using force without informing him of the change;

    b) deploying a taser against Joshua, who was suffering acute symptoms of mental illness, in a location that posed an extreme danger of falling;

    c) failing to utilize appropriate mental health professionals; and,

    d) visibly rushing at Joshua from across the bridge deck with the knowledge that Joshua was suffering symptoms of paranoia and schizophrenia that would likely cause him to jump in order to avoid the perceived threat.

4.9  City of Spokane Defendants' illegal conduct proximately caused David Breidenbach to suffer mental injury, emotional distress and loss of enjoyment of life in amount to be proven at trial.

4.10   State-based claims for relief are brought only against Defendant City of Spokane on behalf of David Breidenbach, which is liable for all the acts of individual defendants and other agents and employees acting within the scope of their duties by respondeat superior.

### PRAYER FOR RELIEF

Plaintiffs respectfully demands a jury trial and further, that Plaintiffs be awarded:

5.1   Economic and non-economic damages in an amount to be proven at trial;

5.2   Punitive damages to the extent authorized by law in an amount to be proven at trial;

5.3   Plaintiffs' reasonable attorneys fees and costs, pursuant to 42 USC § 1983, or as otherwise provided by law.

5.4   For such other and further relief as the court deems just and equitable.

DATED this 26th day of July, 2010.

s/Breean L. Beggs, WSBA #20795
Paukert & Troppmann, PLLC
522 W. Riverside Ave., Suite 560
Spokane, WA 99201
Telephone:  (509) 232-7760

Telephonically Approved
Jeffry K. Finer, WSBA #1460
Law Offices of Jeffry K. Finer
35 W. Main, Suite 300, Spokane, WA 99201
Telephone: (509) 835-5211